FILED

JUL 13 2026

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY ____ DEPUTY CLERK

AY, Pro Se
General Delivery
Folsom, CA 95630

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AY,<br>Plaintiff,<br><br>v.<br><br>LEMONADE INSURANCE COMPANY, a New York corporation; and DOES 1 through 100, inclusive,<br>Defendants. | **Case No.:** 2:26 CV 2432 TLN JDP(PS)<br>**COMPLAINT FOR:**<br>**1. BREACH OF CONTRACT**<br>**2. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (BAD FAITH)**<br>**3. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br>**4. DISCRIMINATION IN VIOLATION OF THE UNRUH CIVIL RIGHTS ACT (CAL. CIV. CODE § 51)**<br>**5. RETALIATION IN VIOLATION OF THE UNRUH CIVIL RIGHTS ACT (CAL. CIV. CODE § 51)**<br>**6. VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200 ET SEQ.)**<br>**7. DECLARATORY RELIEF (28 U.S.C. §§ 2201 – 2202)**<br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

**1.** This is an action for damages and equitable relief arising from Defendant Lemonade Insurance Company's wrongful conduct toward Plaintiff AY during the handling of Plaintiff's insurance claim. Defendant engaged in a pattern of abuse, concealment, discrimination, and intimidation against Plaintiff based on their disabilities. Defendant refused to provide reasonable accommodations for Plaintiff's known disabilities, violated Plaintiff's disability rights and civil rights, and refused to provide proper services as required by law.

**2.** Plaintiff AY is a person with disabilities, including dyslexia, memory impairment, cognitive disorder, severe anxiety disorder, fibromyalgia, Rejection Sensitive Dysphoria (RSD), and related conditions that cause a strong sense of justice and perfectionism. These disabilities substantially impair their ability to organize and process detailed documentation, recognize minor discrepancies, and recall specific facts with precision. Defendant knew or should have known of these disabilities during the claims process.

**3.** Despite Plaintiff's repeated requests for accommodation and their good-faith attempts to correct inadvertent errors in their documentation, Defendant willfully ignored their disabilities, falsely accused them of fraud and criminal conduct to intimidate them, refused to provide them with basic information about their claim, denied their claim without reasonable basis, canceled their policy in retaliation for their complaints, and inflicted severe emotional distress that caused serious physical harm, including multiple hospitalizations for anxiety attacks.

**4.** Plaintiff seeks all damages recoverable under California law arising from Defendant's wrongful conduct, including contractual policy benefits to the extent recoverable, consequential damages caused by Defendant's breach of contract and bad faith, emotional distress damages, economic losses, and all other relief authorized by law. Plaintiff does not seek recovery beyond the coverage provided by the insurance policy except as otherwise permitted by California law.

**5.** Plaintiff files this complaint under pseudonym AY due to safety concerns. Plaintiff has been targeted and received death threats in connection with their litigation activities. Proceeding under their legal name would expose them to further harassment, threats, and danger. A separate motion for permission to proceed under pseudonym is being filed concurrently herewith, supported by a declaration detailing the specific threats Plaintiff has received.

**6.** Plaintiff is unaware of the true names and capacities of Defendants sued herein as DOES 1 through 100, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named Defendants is legally responsible in some manner for the events and happenings referred to herein and that Plaintiff's damages were proximately caused by their conduct.

**JURISDICTION AND VENUE**

**7.** This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because Plaintiff is a citizen of California, Defendant Lemonade Insurance Company is a citizen of New York (incorporated in New York with its principal place of business in New York), and the amount in controversy exceeds $75,000, exclusive of interest and costs, as evidenced by Plaintiff's economic damages, emotional distress, medical expenses, and statutory and punitive damages sought in the Prayer for Relief.

**8.** Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this claim occurred in Folsom, California, and Plaintiff resides within this district.

**9.** Plaintiff sought administrative assistance through the California Department of Insurance, the Better Business Bureau, and the New York Better Business Bureau. The California Department of Insurance investigated and closed Plaintiff's complaint without resolving the dispute, advising Plaintiff that their remedy lay in court. Plaintiff also filed complaints with the Better Business Bureau (BBB) regarding Defendant's conduct. The BBB acknowledged Plaintiff's complaints and provided responses from Lemonade, but the BBB was unable to resolve the dispute. Plaintiff has exhausted all available administrative remedies.

**CHOICE OF LAW**

**10.** California law applies to all claims in this action. The insurance policy was issued and delivered to Plaintiff in California, the insured property is located in California, the loss occurred in California, Defendant's performance obligations were to be performed in California, and Plaintiff is a California resident. See Cal. Civ. Code § 1646; *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal.App.4th 1436 (2007).

**THE PARTIES**

**11.** Plaintiff AY is a disabled individual residing in California. Plaintiff suffers from disabilities that substantially limit their major life activities, including dyslexia, memory impairment, cognitive disorder, severe anxiety disorder, fibromyalgia, and Rejection Sensitive Dysphoria (RSD). Plaintiff also experiences a strong sense of justice and perfectionism as a result of their disabilities, which drives them to seek accountability for wrongful conduct but also makes them particularly vulnerable to the emotional and physical harm caused by false accusations and institutional rejection.

**12.** Plaintiff's disabilities cause them to have difficulty recognizing and remembering details, organizing documents, and processing information. They frequently forget facts and events. They recognize regularities and patterns but cannot retain specific details. When something is not as it should be, or when they believe they have been treated unfairly, they experience severe anxiety attacks. These attacks are not merely emotional but result in serious physical consequences, including hospitalization.

**13.** Despite their disabilities, Plaintiff has made extraordinary efforts to maintain their own records, organize their documentation, and advocate for themselves in interactions with Defendant and in court proceedings.

**14.** Plaintiff proceeds under the pseudonym AY due to safety concerns. Plaintiff has been targeted and has received death threats in connection with their litigation activities. Disclosure of their legal name would expose them to significant risk of harm, harassment, and further threats. The threat of harm is real and ongoing. Plaintiff's safety concerns are a direct result of their legal activities and the opposition they have faced from those who do not wish to see them succeed in vindicating their rights. Plaintiff's anxiety disorder, which is exacerbated by threats and harassment, makes the risk of harm particularly severe. Plaintiff's health and safety would be substantially endangered if their identity were disclosed. A separate motion for permission to proceed under

pseudonym, supported by a declaration with specific details of the threats, is being filed concurrently herewith.

**15.** Defendant Lemonade Insurance Company is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 5 Crosby Street, Floor 3, New York, New York 10013. Defendant is authorized to do business in California and regularly transacts business in California through its registered agent, Corporation Service Company, located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833. Defendant issued a renters insurance policy to Plaintiff for property located in Folsom, California. Defendant is authorized and regulated by the California Department of Insurance. Defendant's services are provided to California residents.

**16.** The true names and capacities of Defendants sued herein as DOES 1 through 100, inclusive, are unknown to Plaintiff at this time. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named Defendants is legally responsible in some manner for the events and happenings referred to herein and that Plaintiff's damages were proximately caused by their conduct. Plaintiff will seek leave to amend this Complaint to allege their true names and capacities when ascertained.

## FACTUAL ALLEGATIONS

### A. The Insurance Policy

**17.** In August 2024, Plaintiff AY purchased a renters insurance policy from Defendant, Policy Number LP35746D705, for their residence at 1550 Broadstone Parkway, Folsom, California.

**18.** The policy provided personal property coverage in the amount of $95,000 and personal liability coverage in the amount of $100,000.

**19.** Plaintiff paid the premium in full for the policy term, which ran from August 8, 2024,

to August 8, 2025.

**20.** Plaintiff's lease agreement for their apartment required them to maintain renters insurance as a condition of occupancy. Plaintiff was not permitted to move into the apartment without proof of valid insurance. Plaintiff relied on Defendant to provide this essential service, which Defendant promised to provide.

**21.** As a condition of scheduling the watches and jewelry for coverage under the policy, Defendant required Plaintiff to submit photographic or video documentation of the items showing the current date, which Plaintiff provided in August 2024. This documentation confirmed Plaintiff's possession of the items prior to the August 12, 2024 theft.

**B. The Theft Loss and Plaintiff's Claim**

**22.** On or about August 12, 2024, Plaintiff suffered a theft of personal property.

**23.** Plaintiff promptly reported the theft to law enforcement. The Folsom Police Department issued a police report documenting the theft.

**24.** Plaintiff promptly notified Defendant of the loss and filed a claim, Claim Number LC819A63019, under their policy.

**25.** Plaintiff submitted documentation to Defendant to support their claim, including a list of stolen items, receipts, and the police report.

**26.** Plaintiff had previously provided Defendant with photographic and video documentation of the watches and jewelry as part of the scheduling process when the policy was issued. This documentation, which Plaintiff provided in August 2024, confirmed Plaintiff's possession of the items prior to the theft. Defendant's subsequent claim denial was based on alleged receipt discrepancies, despite having already verified the existence and possession of the items through Plaintiff's documentation.

**C. Plaintiff's Disabilities and the Documentation Errors**

**27.** Plaintiff suffers from dyslexia, memory impairment, cognitive disorder, severe anxiety disorder, fibromyalgia, and Rejection Sensitive Dysphoria (RSD). These conditions cause them to have significant difficulty organizing and processing detailed documentation, recognizing minor discrepancies, and recalling specific facts.

**28.** Due to their disabilities, Plaintiff maintained multiple folders and files on their computer for record-keeping purposes. They had one set of files for their insurance claim and another set of files for personal records related to items they had purchased as gifts for international travel.

**29.** During the stressful period immediately following the theft, Plaintiff was in the process of moving and had many boxes containing their belongings. Their files were disorganized. In their rush to submit their claim, they inadvertently submitted documents intended for their personal records rather than the correct receipts for their claim.

**30.** The submitted documents contained only the following minor, non-substantive modifications:

**a.** Corrections to the spelling of Plaintiff's name to match their legal name on the policy;

**b.** Removal of blank pages to reduce file size;

**c.** File format conversions (e.g., Word to PDF), which did not alter the content but created a false "modified date" in the file properties.

**31.** Plaintiff did not alter any prices, quantities, item descriptions, or purchase dates on any receipt. The substance of every receipt remained accurate and unchanged.

**D. Plaintiff's Attempts to Correct the Errors**

**32.** On February 17, 2025, Plaintiff emailed Defendant, stating: "Please advise which receipts were modified, so I could provide you with originals, as my name was misspelled, and I had

to correct it to avoid the confusion."

**33.** On April 17, 2025, after Defendant denied their claim, Plaintiff emailed Defendant again, stating: "I believe I submitted wrong receipts from my personal records, so I need to see actual order numbers to resubmit the correct receipts."

**34.** On April 18, 2025, Plaintiff wrote: "Please list all modified receipts, so I could verify what was modified there besides my name. I will also submit original receipts without any modifications."

**35.** On April 19, 2025, Plaintiff wrote: "Please advise which receipts I need to resubmit, and I'll submit all new receipts up to my coverage limits."

**36.** On April 21, 2025, Plaintiff wrote: "Your denial is based on false accusations and discrimination against me."

**37.** Throughout this period, Plaintiff repeatedly requested a copy of the allegedly "altered" receipts so they could identify which documents they needed to correct and resubmit. Defendant refused to provide these documents.

**38.** Plaintiff repeatedly requested a copy of their recorded statement so they could verify what they had actually said. Defendant refused to provide this statement.

**39.** Plaintiff repeatedly requested additional time and accommodation due to their disabilities. Defendant refused.

**40.** Plaintiff was willing and able to correct any errors in their documentation if Defendant would simply tell them which documents were in question. Defendant refused to provide this basic information, instead using the alleged discrepancies as the basis for denying their entire claim and canceling their policy.

**E. Defendant's Discriminatory Conduct and Failure to Accommodate**

**41.** Plaintiff's disabilities were known to Defendant through Plaintiff's repeated communications in which they explained that they had difficulty organizing documents, that they had submitted receipts by mistake, that they had confused their files, and that they needed assistance identifying which documents to correct.

**42.** Plaintiff's disabilities were further evidenced by their repeated requests for accommodation, including requests for additional time, requests for copies of their documents and statement, and their inability to recall details due to their memory impairment.

**43.** Defendant failed to provide Plaintiff with reasonable accommodations for their disabilities, including but not limited to:

**a.** Failing to provide documents in electronic format that Plaintiff could read using text-to-speech software, despite Plaintiff's repeated requests for this accommodation;

**b.** Failing to provide copies of the allegedly altered receipts;

**c.** Failing to provide a copy of the recorded statement;

**d.** Failing to allow Plaintiff additional time to locate and submit original receipts;

**e.** Failing to consider Plaintiff's cognitive impairments as an explanation for the documentation errors;

**f.** Failing to train its employees in disability awareness and accommodation.

**44.** Instead of providing accommodations, Defendant exploited Plaintiff's disabilities to falsely accuse them of fraud to intimidate them, knowing that they would have difficulty defending themselves due to their memory impairment and cognitive limitations.

**45.** Plaintiff's disabilities are not visible to an untrained observer. However, Defendant's claims examiners are trained professionals who were repeatedly informed by Plaintiff of their difficulties. Defendant willfully ignored these communications and chose to treat Plaintiff's

disability-related errors as intentional fraud.

**F. Defendant's Unreasonable Denial of Plaintiff's Claim**

**46.** On April 17, 2025, Defendant sent Plaintiff a letter denying their claim in its entirety. The denial letter stated that Defendant had determined that Plaintiff had engaged in misrepresentation and that therefore Lemonade had "no obligation to provide coverage."

**47.** The denial letter alleged that Plaintiff had submitted receipts that showed "names and addresses had been changed," "items had been changed," and "quantity of items had been increased."

**48.** The denial letter falsely stated that Plaintiff had been unable to verify proof of ownership and that the items were stolen. Plaintiff had provided a police report and other documentation substantiating the theft. Additionally, Plaintiff had provided photographic and video documentation of the watches and jewelry as part of the scheduling process when the policy was issued, which Defendant had in its possession and which provided evidence supporting Plaintiff's ownership and possession of the items.

**49.** Defendant's allegations of fraud are contradicted by the evidence Plaintiff submitted, including the photographic and video documentation of the watches and jewelry. Plaintiff did not change any prices, quantities, item descriptions, or purchase dates on any receipt. The only changes to the receipts were minor name corrections and the removal of blank pages, both done for Plaintiff's personal record-keeping purposes.

**50.** Defendant's denial of Plaintiff's claim was unreasonable and without proper cause. Defendant failed to conduct a thorough and fair investigation. Defendant ignored Plaintiff's explanations and their offers to correct any errors. Defendant failed to accommodate Plaintiff's disabilities. Defendant failed to consider exculpatory evidence. Defendant instead seized on minor, non-material discrepancies and used them as a pretext to deny the claim.

**G. Defendant's False Statements and Concealment**

**51.** Defendant repeatedly and falsely claimed that Plaintiff had "admitted" to changing the numbers on their receipts.

**52.** On April 18, 2025, Defendant's claims examiner Candace L. wrote to Plaintiff: "You admitted to changing numbers on the receipts in a recorded statement."

**53.** Plaintiff never admitted to changing any numbers on any receipt. Plaintiff's actual statement was that they corrected the spelling of their name for personal record-keeping purposes and that they submitted some receipts by mistake.

**54.** Plaintiff responded: "I did not admit to changing numbers, I just said that my name should get corrected to Aleksandr, as Alex or Alek, which was on my receipts might not fit to my policy name. The numbers of items and their prices on the receipts was never changed."

**55.** Defendant ignored Plaintiff's explanation and continued to insist that Plaintiff had admitted to changing numbers.

**56.** On April 18, 2025, Defendant wrote: "You admitted to editing the below receipts and would not comply with a 3 way call to Amazon for us to verify the purchases."

**57.** Plaintiff had not refused to comply with a three-way call. Plaintiff had stated that they wanted to withdraw a particular receipt because they realized they had submitted it by mistake and wanted to resubmit the correct receipt. Defendant twisted Plaintiff's words to create the false impression that they were being uncooperative.

**58.** Defendant's supervisor Chelsea Keller wrote on April 21, 2025: "On a phone call with Carly Lane, you advised that you changed the name and address on the receipt. On a separate phone call you also advised that you changed the quantities on the receipts to combine invoices."

**59.** Plaintiff never stated that they changed quantities on any receipt. Plaintiff's statement

was that they changed their name for personal record-keeping purposes. Defendant falsely attributed a statement to Plaintiff that they never made.

**60.** Defendant's repeated false statements about Plaintiff's admissions were made with knowledge of their falsity or with reckless disregard for the truth. Defendant made these false statements to create a false paper trail to justify the denial of their claim.

**61.** Defendant refused to provide Plaintiff with a copy of the recorded statement, knowing that the statement would prove that Plaintiff had not admitted to the things Defendant claimed they had admitted to.

**62.** Defendant's concealment of information was particularly harmful to Plaintiff because of their memory impairment and cognitive disorders. Plaintiff's disabilities made them more susceptible to questioning their own memory and judgment. Defendant knowingly exploited Plaintiff's vulnerabilities.

**H. Defendant's Refusal to Provide Information and Services**

**63.** Despite Plaintiff's repeated requests, Defendant refused to provide Plaintiff with proper services as required by law, including:

**a.** A copy of the receipts it claimed had been altered;

**b.** A copy of the recorded statement in which Plaintiff purportedly admitted to fraud;

**c.** A list of the specific documents in question;

**d.** Contact information for a supervisor to review the denial;

**e.** Information about Defendant's arbitration policy.

**64.** Defendant's refusal to provide this information was deliberate and designed to prevent Plaintiff from being able to correct their errors and prove their claim. By concealing this information, Defendant prevented Plaintiff from understanding the basis of the denial and from presenting

countervailing evidence.

**65.** Defendant refused to provide proper services to Plaintiff, including:

**a.** Failing to provide the services promised in the policy;

**b.** Failing to provide a fair and thorough investigation;

**c.** Failing to provide explanations for its decisions;

**d.** Failing to provide documents requested by Plaintiff;

**e.** Failing to provide a meaningful appeal process.

**66.** Defendant refused to accommodate Plaintiff's disabilities, instead using Plaintiff's disability-related errors as an excuse to deny their claim and cancel their policy.

**I. Defendant's Cancellation of Plaintiff's Policy**

**67.** On April 23, 2025, Defendant's employee Gigi C. informed Plaintiff that Defendant would cancel their policy effective May 12, 2025.

**68.** Defendant stated the cancellation was based on "the following reasons: During the investigation of your claim, LC819A63019, we detected some inaccuracies in the information you provided."

**69.** The "inaccuracies" relied upon were the same alleged discrepancies that formed the basis for the claim denial.

**70.** Defendant did not give Plaintiff an opportunity to correct these alleged inaccuracies before canceling their policy.

**71.** Defendant's cancellation of Plaintiff's policy was retaliatory. Plaintiff had filed a complaint about Defendant's handling of their claim. Immediately after Plaintiff filed their complaint, Defendant decided to cancel their policy. Plaintiff had also requested disability accommodations, and the cancellation occurred shortly after these requests.

**72.** Defendant's cancellation of Plaintiff's policy was discriminatory. Defendant treated Plaintiff differently from other insureds based on their disabilities. Other insureds who made documentation errors were given opportunities to correct them.

**73.** Defendant's cancellation of Plaintiff's policy placed Plaintiff at serious risk. Plaintiff's lease required them to maintain renters insurance. Without insurance, they risked being evicted from their apartment.

**74.** Plaintiff was forced to scramble to find new insurance coverage on short notice. They paid a full year's premium for a new policy but only used it for a few months of the year, resulting in financial loss.

**J. Defendant's Regulatory Violations**

**75.** The following provisions of California law establish the standard of care for insurers. Defendant's violations constitute evidence of bad faith and unreasonable conduct:

**76.** California regulations provide that insurers should accept or deny claims within 40 calendar days of receiving proof of claim, with an additional 40 days allowed if the insurer is investigating a suspected fraudulent claim. See 10 Cal. Code Regs. § 2695.7(b). Defendant's delay of several months without justification constitutes evidence of unreasonable claims handling.

**77.** California law requires insurers to "effectuate prompt, fair and equitable settlements of claims." See Cal. Ins. Code § 790.03(h)(5). Defendant failed to do so by delaying the investigation, refusing to provide information, and denying the claim without reasonable basis.

**78.** California law requires insurers to "diligently search for evidence which supports its insured's claim." See 10 Cal. Code Regs. § 2695.7(c). Defendant failed to do so by ignoring Plaintiff's explanations, failing to consider their disabilities, and seizing only on evidence that supported its denial.

**79.** California law prohibits insurers from discriminating in claims settlement practices based on disability. See 10 Cal. Code Regs. § 2695.7(a). Defendant's failure to accommodate Plaintiff's known disabilities, and its exploitation of those disabilities to accuse Plaintiff of fraud, constitutes discrimination in claims settlement practices in violation of this regulation.

**80.** California law requires insurers to provide necessary forms, instructions, and reasonable assistance to claimants. See 10 Cal. Code Regs. § 2695.5(e)(2). Defendant failed to do so by refusing to provide Plaintiff with information about their claim, their rights, and the basis for the denial.

**K. The Severe Emotional and Physical Harm Caused by Defendant's Conduct**

**81.** Defendant's conduct caused Plaintiff severe emotional distress. Plaintiff was repeatedly accused of fraud, a serious crime. Plaintiff was told their claim was denied and their policy canceled. Plaintiff was refused basic information about their own claim. Plaintiff was treated as a criminal despite being an innocent victim of theft.

**82.** Plaintiff suffers from pre-existing anxiety disorder, fibromyalgia, and Rejection Sensitive Dysphoria (RSD). Defendant's conduct exacerbated these conditions to the point that Plaintiff experienced multiple severe anxiety attacks requiring hospitalization.

**83.** Plaintiff suffers from documented disabilities, including anxiety disorder, Rejection Sensitive Dysphoria (RSD), fibromyalgia, and other conditions that are severely exacerbated by stress. When Plaintiff experiences false rejection or institutional denial – such as being falsely accused of fraud without being allowed to see the evidence – Plaintiff's body responds with severe physical symptoms. These symptoms are not imagined. They are documented physiological responses that have required hospitalization.

**84.** Plaintiff's Rejection Sensitive Dysphoria (RSD) is a well-documented condition in

which perceived rejection triggers overwhelming emotional and physical pain. RSD is commonly associated with ADHD and trauma responses. Plaintiff's vulnerability to this condition is demonstrated by a prior medical event: in July 2021, Plaintiff suffered a spontaneous collapsed lung (pneumothorax) while riding a bicycle. Plaintiff did not fall or experience any trauma to the chest. The pneumothorax occurred during a period of severe emotional distress caused by institutional rejection and false denial of disability. This prior event demonstrates Plaintiff's documented vulnerability to severe physical harm from stress and rejection.

**85.** Plaintiff's disabilities, including fibromyalgia, cause chronic pain that is exacerbated by stress. Fibromyalgia is a recognized condition in which physical and emotional stress triggers widespread musculoskeletal pain, fatigue, and cognitive difficulties. When Plaintiff experiences false accusations, institutional rejection, or the denial of their rights, the resulting stress triggers severe fibromyalgia flare-ups, causing debilitating pain and exacerbating all of Plaintiff's other disabilities.

**86.** Plaintiff's Rejection Sensitive Dysphoria (RSD) and strong sense of justice are not merely personality traits – they are documented symptoms of Plaintiff's disabilities. RSD causes extreme emotional pain in response to perceived rejection or criticism. For Plaintiff, false accusations of fraud and the refusal to provide evidence of their innocence constitute a form of institutional rejection that triggers severe anxiety, physical pain, and cognitive impairment. This is the same pattern of rejection Plaintiff endured for two decades in deportation proceedings, which caused permanent disability.

**87.** Chronic stress can severely damage the body by permanently flooding it with stress hormones like cortisol and adrenaline. Over time, this chronic "fight-or-flight" response suppresses the immune system, raises blood pressure, and promotes dangerous inflammation, dramatically increasing the risk for heart disease, strokes, and depression. The continuous presence of these stress

chemicals wreaks havoc on almost every system in the body: the cardiovascular system (ongoing increases in heart rate and elevated blood pressure damage arteries, leading to an increased risk of hypertension, heart attacks, and strokes); the immune system (prolonged stress response suppresses immune function, leaving the body more vulnerable to infections and slowing down healing); mental health and brain function (constant exposure to cortisol can alter brain structure, impairing memory and concentration, and significantly raises the likelihood of developing chronic conditions like anxiety disorders and clinical depression); the digestive system (stress is directly linked to gastrointestinal issues such as acid reflux, bloating, and irritable bowel syndrome); metabolic and weight changes (stress causes fluctuations in appetite and weight, alters metabolic processes, increases fat storage around the abdomen, and elevates blood glucose levels, heightening the risk of obesity and type 2 diabetes); and sleep disturbances (stress disrupts sleep patterns, leading to insomnia, which further degrades overall physical and mental health).

**88.** When Defendant falsely accused Plaintiff of fraud and refused to provide the evidence needed to prove innocence, it triggered the same trauma response Plaintiff endured for two decades in deportation proceedings and false denial of disability – the same type of response that previously contributed to Plaintiff's spontaneous pneumothorax. Plaintiff has been hospitalized multiple times for anxiety attacks related to Defendant's conduct. Each time Plaintiff interacts with Defendant or is reminded of the mistreatment, they experience renewed anxiety and physical distress. Plaintiff's disabilities make them particularly vulnerable to the physiological effects of stress. The pain and worsening of Plaintiff's conditions are not merely emotional – they are documented, physical consequences of Defendant's discriminatory and retaliatory conduct.

**89.** Plaintiff was hospitalized for their collapsed lung and required medical treatment.

**90.** Plaintiff's emotional distress is ongoing and continues to the present day. The distress

is renewed each time Plaintiff attempts to vindicate their rights and encounters further resistance from Defendant or the court system.

**91.** Plaintiff's physical health has been permanently affected by Defendant's conduct. The chronic stress has caused lasting damage to Plaintiff's cardiovascular, neurological, immune, and digestive systems, and has severely exacerbated Plaintiff's fibromyalgia and other disabilities.

**L. Plaintiff's Disabilities and the Importance of Accommodation**

**92.** Plaintiff incorporates all preceding paragraphs.

**93.** Plaintiff's physical and mental disabilities, including severe anxiety disorder, dyslexia, memory impairment, cognitive disorder, fibromyalgia, and Rejection Sensitive Dysphoria (RSD), substantially impair their ability to:

**a.** Recognize and remember details;

**b.** Organize and process detailed documentation;

**c.** Recognize minor discrepancies in documents;

**d.** Recall specific facts and events with precision;

**e.** Communicate clearly and consistently under stress;

**f.** Tolerate false accusations or institutional rejection without experiencing severe physical and emotional symptoms.

**94.** These disabilities were known to Defendant through Plaintiff's repeated communications in which they explained that they had difficulty organizing documents, that they had submitted receipts by mistake, that they had confused their files, and that they needed assistance identifying which documents to correct.

**95.** Due to these disabilities, Plaintiff's statements and documentation submissions were often confused and inconsistent. Plaintiff did not intentionally misrepresent anything. Rather, their

disabilities caused them to inadvertently submit wrong receipts, forget what they had submitted, and make confusing statements during the claims process.

**96.** Defendant exploited Plaintiff's disabilities to falsely accuse them of fraud, knowing that Plaintiff would have difficulty defending themselves due to their memory impairment and cognitive limitations.

**97.** Defendant refused to accommodate Plaintiff's disabilities by:

**a.** Failing to provide copies of the allegedly altered receipts for Plaintiff's review;

**b.** Failing to provide a copy of the recorded statement so Plaintiff could verify what they had said;

**c.** Failing to allow Plaintiff additional time to locate and submit original receipts;

**d.** Failing to consider Plaintiff's cognitive impairments as an explanation for the documentation errors;

**e.** Failing to engage in any meaningful dialogue about Plaintiff's disabilities and their impact on the claim.

**98.** Defendant's concealment of information was particularly harmful to Plaintiff because of their memory impairment and cognitive disorders. Plaintiff's disabilities made them susceptible to questioning their own memory and judgment. Defendant knowingly exploited these vulnerabilities.

**99.** Plaintiff does not remember making the statements Defendant attributes to them. Plaintiff does not remember confirming that they altered receipts. Plaintiff does not remember admitting to fraud. Plaintiff's memory impairment makes it impossible for them to verify or challenge Defendant's version of events without access to the recorded statement and the allegedly altered receipts.

**100.** Defendant's refusal to provide the recorded statement and the allegedly altered

receipts prevented Plaintiff from understanding the basis of the denial, correcting their errors, and presenting countervailing evidence. This concealment was deliberate and designed to prevent Plaintiff from defending themselves.

**M. Defendant's Regulatory History**

**101.** Plaintiff incorporates all preceding paragraphs.

**102.** Plaintiff does not assert liability based upon Defendant's prior regulatory history. Those enforcement actions are alleged solely as background regarding Defendant's knowledge of claims-handling obligations and are not offered to prove Defendant acted in conformity with prior conduct in this case.

**103.** Defendant has been subject to regulatory enforcement actions in Pennsylvania and Washington for insurance-related violations. The Pennsylvania Insurance Department fined Lemonade $70,000 for using incorrect premium capping factors and for claims handling violations. The Washington Insurance Commissioner fined Lemonade $100,000 for using an incorrect base loss cost on property policies.

**TOLLING OF STATUTES OF LIMITATIONS**

**104.** Plaintiff's claims are timely. All claims are filed within the applicable statutes of limitations.

**105.** To the extent any claim is alleged to be untimely, Plaintiff asserts the following:

**a.** Equitable tolling based on Plaintiff's diligent pursuit of administrative remedies through the California Department of Insurance. See *Elkins v. Derby*, 12 Cal.3d 410, 414 (1974).

**b.** Equitable estoppel based on Defendant's concealment of material information that prevented Plaintiff from fully discovering the extent of Defendant's wrongful conduct.

**c.** Equitable tolling under Cal. Code Civ. Proc. § 352, as Plaintiff's severe disabilities,

including anxiety disorder, cognitive impairment, and memory disorder, combined with multiple hospitalizations, rendered Plaintiff incapable of managing their legal affairs during periods of incapacitation.

**106.** Plaintiff pleads tolling only in the alternative.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION: BREACH OF CONTRACT**

**107.** Plaintiff incorporates all preceding paragraphs.

**108.** A valid and enforceable contract existed between Plaintiff and Defendant: the renters insurance policy identified as Policy Number LP35746D705, issued on August 8, 2024, covering Plaintiff's residence at 1550 Broadstone Parkway, Folsom, California.

**109.** Plaintiff performed all conditions precedent and obligations under the contract, including:

**a.** Paying the full premium for the policy term (August 8, 2024 – August 8, 2025);

**b.** Timely reporting the theft loss to Defendant and law enforcement (Folsom Police Department, August 12, 2024);

**c.** Submitting documentation in support of their claim, including a list of stolen items, receipts, and the police report (Claim Number LC819A63019).

**110.** Defendant breached the contract by:

**a.** Failing to pay Plaintiff's claim for theft loss without proper cause, despite Plaintiff's compliance with all policy conditions;

**b.** Failing to conduct a fair and thorough investigation;

**c.** Failing to consider Plaintiff's explanations and corrections regarding the submitted documentation;

**d.** Failing to accommodate Plaintiff's known disabilities;

**e.** Wrongfully denying the claim on April 17, 2025, based on false allegations of fraud;

**f.** Wrongfully canceling the policy on May 12, 2025, in retaliation for Plaintiff's complaints.

**111.** As a direct and proximate result of Defendant's breach, Plaintiff suffered economic damages, including the cost of replacement insurance and other economic losses.

**112.** Plaintiff is entitled to recover all damages proximately caused by Defendant's breach of contract, including compensatory damages, economic losses, and consequential damages under Cal. Civ. Code § 3300, and all damages recoverable under the terms of the insurance contract and applicable law.

**SECOND CAUSE OF ACTION: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (BAD FAITH)**

**113.** Plaintiff incorporates all preceding paragraphs.

**114.** Under California law, every insurance contract contains an implied covenant of good faith and fair dealing, which requires the insurer to give at least as much consideration to the insured's interests as it gives to its own. See *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 574 (1973); *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 818 (1979).

**115.** Defendant breached this implied covenant by engaging in unreasonable and bad faith conduct, including:

**a.** Denying Plaintiff's claim without reasonable basis on April 17, 2025, despite Plaintiff's compliance with all policy conditions and lack of evidence of fraud;

**b.** Failing to conduct a thorough and fair investigation, in violation of Cal. Ins. Code § 790.03(h)(3);

**c.** Failing to consider exculpatory evidence, including Plaintiff's explanations for

documentation errors and disability-related limitations;

d. Failing to accommodate Plaintiff's known disabilities, in violation of 10 Cal. Code Regs. § 2695.7(a);

**d.** Exploiting Plaintiff's disabilities to falsely accuse them of fraud, knowing Plaintiff would struggle to defend themselves due to their memory impairment and cognitive limitations;

**e.** Making false statements about Plaintiff's admissions, in violation of Cal. Ins. Code § 790.03(h)(1);

**f.** Concealing information from Plaintiff, including copies of the allegedly altered receipts and their recorded statement;

**g.** Refusing to provide copies of documents and statements despite Plaintiff's repeated requests;

**h.** Canceling Plaintiff's policy in retaliation for their complaints;

**i.** Delaying the investigation without justification, in violation of 10 Cal. Code Regs. § 2695.7(b);

**j.** Denying the claim based on minor, non-material discrepancies;

**k.** Refusing to provide proper services as required by law, including a fair appeal process.

**116.** Defendant's conduct violated the standards set forth in the California Unfair Claims Settlement Practices Act, Cal. Ins. Code § 790.03(h), and the implementing regulations at 10 Cal. Code Regs. § 2695.1 *et seq.* While there is no independent private right of action under this statute, these violations constitute evidence of Defendant's bad faith and unreasonable claims handling. See *Moradi-Shalal v. Fireman's Fund Ins. Cos.*, 46 Cal.3d 287, 292 (1988).

**117.** An insurer may not ignore evidence supporting coverage or deny a claim without a

full, fair investigation. See *Wilson v. 21st Century Ins. Co.*, 42 Cal.4th 713, 723 (2007). Defendant did exactly that.

**118.** Defendant's conduct was unreasonable, without proper cause, and in reckless disregard of Plaintiff's rights. A reasonable insurer would have:

**a.** Investigated Plaintiff's claim fairly;

**b.** Considered their explanations and disability-related limitations;

**c.** Allowed them to correct documentation errors;

**d.** Provided requested documents and information.

**119.** Defendant's discriminatory intent is further evidenced by the timing and circumstances of the cancellation: Defendant canceled Plaintiff's policy shortly after Plaintiff requested disability accommodations and filed a complaint about Defendant's conduct, and treated Plaintiff differently from non-disabled insureds who made similar documentation errors.

**120.** As a direct and proximate result of Defendant's breach, Plaintiff suffered damages, including:

**a.** Severe emotional distress;

**b.** Physical injuries and medical expenses (including hospitalizations for anxiety attacks and exacerbation of fibromyalgia);

**c.** Stress and anxiety;

**d.** Financial harm (e.g., cost of replacement insurance).

**121.** Plaintiff is entitled to recover:

**a.** Compensatory damages for emotional and physical harm;

**b.** Punitive damages under Cal. Civ. Code § 3294, as Defendant's conduct was malicious, oppressive, and fraudulent. Upon information and belief, Defendant's managing agents,

including claims supervisors and other managerial personnel responsible for claim denial and policy cancellation decisions, authorized, ratified, or knowingly failed to prevent the wrongful conduct described herein, including the actions alleged with respect to claims supervisor Chelsea Keller.

**THIRD CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**122.** Plaintiff incorporates all preceding paragraphs.

**123.** Defendant's conduct was extreme and outrageous, exceeding all bounds of decency tolerated in a civilized society. See *Fletcher v. Western National Life Ins. Co.*, 10 Cal.App.3d 376, 394, 403-404 (1970) (recognizing that the insurer-insured relationship is a significant factor supporting a finding of outrageous conduct). Defendant's intentional and reckless conduct included:

**a.** Falsely accusing Plaintiff of fraud (a serious crime) without evidence;

**b.** Falsely claiming Plaintiff admitted to fraud in their recorded statement, despite Plaintiff's denials and requests for the recording;

**c.** Refusing to provide basic information about the claim (e.g., copies of receipts, recorded statement), knowing such refusal would prevent Plaintiff from defending themselves;

**d.** Canceling Plaintiff's policy in retaliation for their complaints;

**e.** Delaying the investigation without justification;

**f.** Denying a legitimate claim based on minor, non-material discrepancies;

**g.** Repeatedly making false statements about Plaintiff's admissions;

**h.** Exploiting Plaintiff's disabilities (e.g., memory impairment, anxiety, RSD, fibromyalgia) to psychologically abuse them.

**124.** Defendant acted with intent to cause Plaintiff severe emotional distress or with reckless disregard for the probability that such distress would occur. Defendant knew or should have known that Plaintiff suffered from severe anxiety disorder, RSD, fibromyalgia, and cognitive

impairments, making them particularly vulnerable to emotional harm.

**125.** As a direct and proximate result, Plaintiff suffered severe emotional distress, including:

**a.** Intense anxiety and fear;

**b.** Panic attacks requiring hospitalization;

**c.** Insomnia and depression;

**d.** Feelings of helplessness and hopelessness.

**126.** Defendant's conduct also caused Plaintiff severe physical harm, including:

**a.** Cardiovascular strain and hypertension;

**b.** Immune system suppression;

**c.** Gastrointestinal distress;

**d.** Fibromyalgia flare-ups and chronic pain;

**e.** Neurological impairment (memory impairment);

**f.** Multiple hospitalizations and medical treatment.

**127.** Plaintiff's emotional and physical distress is ongoing and continues to the present day.

**128.** Plaintiff is entitled to recover:

**a.** Compensatory damages for emotional and physical harm;

**b.** Punitive damages under Cal. Civ. Code § 3294, as Defendant's conduct was malicious and oppressive.

**FOURTH CAUSE OF ACTION: DISCRIMINATION IN VIOLATION OF THE UNRUH CIVIL RIGHTS ACT (CAL. CIV. CODE § 51)**

**129.** Plaintiff incorporates all preceding paragraphs, including the detailed description of their physical and mental disabilities and Defendant's failure to accommodate them.

**130.** Defendant is a business establishment within the meaning of the Unruh Civil Rights

Act, Cal. Civ. Code § 51(b). See *Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142, 1146 (1991).

**131.** Cal. Civ. Code § 51(b) provides that all persons are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever regardless of disability.

**132.** California law independently protects individuals with disabilities through the Disabled Persons Act, Cal. Civ. Code § 54.1(a), which guarantees persons with disabilities full and equal access to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, and other places to which the general public is invited. Defendant's obligations under the Disabled Persons Act reinforce Plaintiff's allegations that Defendant failed to provide equal access to its services because of Plaintiff's disabilities.

**133.** Defendant discriminated against Plaintiff on the basis of their disabilities in violation of the Unruh Act by:

**a.** Failing to accommodate their known disabilities during the claims process;

**b.** Exploiting their disabilities as a basis to accuse them of fraud;

**c.** Treating them differently from non-disabled insureds who make documentation errors;

**d.** Denying their claim and canceling their policy based on disability-related conduct.

**134.** The timing and circumstances of the cancellation – occurring shortly after Plaintiff requested disability accommodations and filed a complaint about Defendant's conduct – support an inference of discriminatory intent.

**135.** Defendant's discrimination was intentional, willful, and malicious. Defendant knew or should have known of Plaintiff's disabilities through Plaintiff's repeated communications and requests for accommodation, yet deliberately ignored them and exploited them to deny Plaintiff's

claim.

**136.** Defendant's violation of the Unruh Act caused Plaintiff to suffer harm, including emotional distress, physical injury, and economic loss.

**137.** Plaintiff has standing to seek injunctive relief because Defendant's cancellation of Plaintiff's policy and the resulting fraud determination remain in Plaintiff's insurance history, potentially affecting Plaintiff's ability to obtain insurance in the future. Plaintiff may need to obtain renters insurance, including from Defendant or other insurers, and Defendant's discriminatory practices create a real and immediate risk of future harm. Plaintiff requests that this Court issue a permanent injunction pursuant to Cal. Civ. Code § 52(a) requiring Defendant to modify its policies, train its employees, and provide reasonable accommodations to individuals with disabilities, as set forth in the Prayer for Relief. Without such injunctive relief, Plaintiff and other individuals with disabilities will continue to face discrimination and barriers to accessing Defendant's services. Money damages alone are insufficient to remedy the ongoing and systemic nature of Defendant's discriminatory practices.

**138.** Pursuant to Cal. Civ. Code § 52(a), Plaintiff is entitled to actual damages, including damages for emotional distress, statutory damages of not less than $4,000 per violation, injunctive relief, and costs. Plaintiff is also entitled to punitive damages under Cal. Civ. Code § 3294.

**FIFTH CAUSE OF ACTION: RETALIATION IN VIOLATION OF THE UNRUH CIVIL RIGHTS ACT (CAL. CIV. CODE § 51)**

**139.** Plaintiff incorporates all preceding paragraphs.

**140.** Plaintiff engaged in protected activity by:

**a.** Requesting reasonable accommodations for their disabilities from Defendant during the claims process;

**b.** Asserting their rights to reasonable accommodation under California law;

**c.** Filing a complaint with the California Department of Insurance regarding Defendant's discriminatory and bad faith conduct.

**141.** Defendant retaliated against Plaintiff after Plaintiff requested disability accommodations and complained of disability discrimination. Such retaliation is alleged as intentional disability discrimination prohibited by the Unruh Civil Rights Act because Defendant's adverse actions were motivated by Plaintiff's assertion of rights guaranteed by that Act.

**142.** Defendant retaliated against Plaintiff for engaging in protected activity by:

**a.** Canceling their policy on May 12, 2025, without justification;

**b.** Targeting Plaintiff for their complaints and accommodation requests, while not canceling policies of non-complaining insureds;

**c.** Making false accusations of fraud after Plaintiff requested disability accommodations.

**143.** The causal connection between Plaintiff's protected activity and Defendant's retaliation is demonstrated by the timing: Plaintiff requested accommodations and filed complaints; Defendant canceled the policy shortly thereafter.

**144.** Defendant's retaliation was knowing, willful, and malicious.

**145.** As a direct and proximate result, Plaintiff suffered harm including:

**a.** Loss of insurance coverage;

**b.** Emotional distress;

**c.** Physical injury;

**d.** Financial harm (e.g., cost of replacement insurance);

**e.** Risk of eviction (due to lack of insurance, violating their lease agreement).

**146.** Plaintiff has standing to seek injunctive relief because Defendant's cancellation of Plaintiff's policy and the resulting fraud determination remain in Plaintiff's insurance history,

potentially affecting Plaintiff's ability to obtain insurance in the future. Plaintiff may need to obtain renters insurance, including from Defendant or other insurers, and Defendant's retaliatory practices create a real and immediate risk of future harm.

**147.** Pursuant to Cal. Civ. Code § 52(a), Plaintiff is entitled to actual damages, including damages for emotional distress, statutory damages of not less than $4,000 per violation, injunctive relief, and costs. Plaintiff is also entitled to punitive damages under Cal. Civ. Code § 3294.

**SIXTH CAUSE OF ACTION: VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200 ET SEQ.)**

**148.** Plaintiff incorporates all preceding paragraphs.

**149.** California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, prohibits any "unlawful, unfair, or fraudulent" business practice. Plaintiff pleads the fraudulent prong with particularity under FRCP 9(b) because the specific false statements, dates, and individuals are identified above.

**150.** Defendant engaged in "unlawful" business practices by:

**a.** Violating the Unruh Civil Rights Act, Cal. Civ. Code § 51;

**b.** Violating California's Unfair Claims Settlement Practices Act, Cal. Ins. Code § 790.03(h);

**c.** Violating the Fair Claims Settlement Practices Regulations, 10 Cal. Code Regs. § 2695.1 *et seq.*

**151.** Defendant engaged in "unfair" business practices by:

**a.** Denying Plaintiff's claim without reasonable basis;

**b.** Failing to conduct a thorough and fair investigation;

**c.** Failing to accommodate Plaintiff's known disabilities;

**d.** Concealing information from Plaintiff, including the recorded statement and allegedly

altered receipts;

**e.** Canceling Plaintiff's policy in retaliation for their complaints.

**152.** Defendant engaged in "fraudulent" business practices by:

**a.** Making false statements about Plaintiff's admissions;

**b.** Falsely claiming Plaintiff admitted to altering receipts;

**c.** Concealing the recorded statement that would prove Plaintiff did not make the admissions Defendant attributed to them. Defendant's false statements were made in the course of its handling of Plaintiff's claim, demonstrating Defendant's willingness to misrepresent insureds' statements to justify claim denials.

**153.** As a direct and proximate result of Defendant's unlawful, unfair, and fraudulent business practices, Plaintiff suffered injury in fact and lost money, including the loss of insurance coverage for which they paid premiums and the cost of replacement insurance.

**154.** Plaintiff seeks prospective injunctive relief because Defendant's fraud determination and cancellation remain in Plaintiff's insurance history, Plaintiff reasonably expects to purchase renters insurance in the future, and Defendant's challenged practices present a continuing threat of future injury absent injunctive relief.

**155.** Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff is entitled to restitution of any funds unlawfully retained by Defendant and injunctive relief. Plaintiff requests that this Court issue a permanent injunction requiring Defendant to modify its policies and practices to comply with California law, train its employees on disability accommodation, and cease its retaliatory and deceptive practices. Defendant's practices are ongoing and will continue to harm Plaintiff and other consumers unless enjoined by this Court.

**SEVENTH CAUSE OF ACTION: DECLARATORY RELIEF (28 U.S.C. §§ 2201 – 2202)**

**156.** Plaintiff incorporates all preceding paragraphs.

**157.** An actual case and controversy exists between Plaintiff and Defendant within the meaning of 28 U.S.C. § 2201.

**158.** Plaintiff seeks a declaration that:

**a.** Defendant's denial of Plaintiff's claim was wrongful and in bad faith;

**b.** Defendant's cancellation of Plaintiff's policy was wrongful, retaliatory, and discriminatory;

**c.** Defendant failed to provide Plaintiff with full and equal access to its services in violation of the Unruh Act, including by failing to provide accommodations for Plaintiff's known disabilities;

**d.** Defendant's conduct constitutes a violation of Plaintiff's rights.

**159.** Such a declaration will terminate the controversy between the parties.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff AY prays for judgment against Defendant Lemonade Insurance Company and DOES 1 through 100 as follows:

**A. For Breach of Contract (First Cause of Action):**

**1.** Award compensatory damages for economic losses, including the cost of replacement insurance and all other economic damages proximately caused by Defendant's breach;

**B. For Bad Faith (Second Cause of Action):**

**2.** Award compensatory damages for emotional distress, physical injuries, medical expenses (including hospitalization for anxiety attacks and treatment for exacerbation of fibromyalgia and other disabilities), stress, and anxiety;

**3.** Award punitive damages under Cal. Civ. Code § 3294, as Defendant's conduct was

malicious, oppressive, and fraudulent;

**C. For Intentional Infliction of Emotional Distress (Third Cause of Action):**

**4.** Award compensatory damages for severe emotional distress and physical injuries;

**5.** Award punitive damages under Cal. Civ. Code § 3294;

**D. For Unruh Act Discrimination (Fourth Cause of Action):**

**6.** Award actual damages for emotional distress, physical injuries, and financial harm;

**7.** Award statutory damages of not less than $4,000 per violation pursuant to Cal. Civ. Code § 52(a);

**8.** Award punitive damages under Cal. Civ. Code § 3294;

**9.** Award injunctive relief requiring Defendant to modify its policies, train its employees, and provide reasonable accommodations to individuals with disabilities;

**E. For Unruh Act Retaliation (Fifth Cause of Action):**

**10.** Award actual damages for emotional distress and financial harm;

**11.** Award statutory damages of not less than $4,000 per violation pursuant to Cal. Civ. Code § 52(a);

**12.** Award punitive damages under Cal. Civ. Code § 3294;

**13.** Award injunctive relief requiring Defendant to modify its policies, train its employees, and provide reasonable accommodations to individuals with disabilities;

**F. For Violation of the Unfair Competition Law (Sixth Cause of Action):**

**14.** Award restitution of any funds unlawfully retained by Defendant through its unfair business practices;

**15.** Award injunctive relief requiring Defendant to modify its policies and practices to comply with California law, train its employees on disability accommodation, and cease its

retaliatory and deceptive practices;

**G. For Declaratory Relief (Seventh Cause of Action):**

**16.** Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 determining the rights and obligations of the parties;

**H. General Relief:**

**17.** Award prejudgment and post-judgment interest under Cal. Civ. Code § 3287;

**18.** Award costs of suit under Cal. Civ. Proc. Code § 1033.5;

**19.** Grant such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July 12, 2026

Respectfully submitted,

/s/ AY
AY
Plaintiff, Pro Se