FILED

JUL 13 2026

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

AY, Pro Se
General Delivery
Folsom, CA 95630

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

AY,
Plaintiff,

v.

LEMONADE INSURANCE COMPANY, a New York corporation; and DOES 1 through 100, inclusive,
Defendants.

**Case No.:** 2:26 CV 2432 TLN JDP (PS)

**PLAINTIFF'S MOTION TO PROCEED UNDER PSEUDONYM**

Plaintiff, proceeding pro se, respectfully moves this Court for an order permitting Plaintiff to proceed under the pseudonym "AY" in all public filings, to file their physical residential address under seal, and to use General Delivery, Folsom, California 95630 as their public mailing address. This motion is made pursuant to the Court's inherent authority to manage its proceedings and protect the safety of litigants, as recognized by the Ninth Circuit in *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000).

Plaintiff requests that this motion be decided on the written submissions. Plaintiff cannot participate in oral argument due to cognitive processing disorders that prevent real-time processing of spoken language, as detailed in Plaintiff's concurrently filed Motion for Reasonable Accommodation.

This is not a request to hide from accountability. Plaintiff will disclose their true identity to Defendant under seal once Defendant appears in this case. Defendant will know exactly who Plaintiff is and will have full access to Plaintiff's identity for all litigation purposes, including service of process, discovery, and trial. Plaintiff seeks only to prevent public disclosure of their name on the docket, where it would be accessible to third parties who have made death threats against Plaintiff and to anyone else who wishes to harass, intimidate, or harm Plaintiff based on their identity.

This motion is supported by the concurrently filed Declaration of Plaintiff, which provides detailed factual support under penalty of perjury for both this motion and Plaintiff's Motion for Reasonable Accommodation.

## I. PLAINTIFF HAS RECEIVED DEATH THREATS

Plaintiff has received documented death threats based on their Jewish identity, non-binary gender identity, disability status, and history as an asylum seeker. These are not vague expressions of dislike or generalized concerns about harassment – they are specific, unequivocal, unconditional, and immediate threats of lethal violence.

Plaintiff has been subjected to anti-Semitic harassment, including being called anti-Semitic slurs, having the Holocaust denied, and being told Plaintiff should be "gassed in the chamber" and "burned in hell." Plaintiff has been threatened with death by an individual who stated: "I will kill you if you don't drop this." This threat was unequivocal, unconditional, immediate, and specific. It was made because of Plaintiff's legal advocacy, identity, and refusal to drop a complaint.

These threats were not made by Defendant. They were made by third parties who targeted Plaintiff because of who Plaintiff is. But the public docket of this case would provide those third parties with exactly what they need to locate and harm Plaintiff: a full name, a case number, and a venue. The docket would serve as a roadmap to Plaintiff's location and activities.

Plaintiff has also been subjected to constant abuse, harassment, and targeting because of their disability, non-binary status, and vulnerability. Plaintiff has been subjected to misgendering, retaliation, and intimidation by various individuals and entities. These experiences are not isolated incidents – they form a pattern of targeting that escalates when Plaintiff's identity becomes publicly associated with litigation.

Disclosure of Plaintiff's physical address or true name on the public docket would endanger

Plaintiff's safety and severely exacerbate Plaintiff's diagnosed anxiety disorder, post-traumatic stress disorder, and Rejection Sensitive Dysphoria. These conditions have previously resulted in life-threatening physical harm, including a collapsed lung caused by an anxiety attack and multiple hospitalizations. The risk is not speculative – it is documented, severe, and ongoing.

Plaintiff's Rejection Sensitive Dysphoria makes Plaintiff particularly vulnerable to the consequences of public exposure. When Plaintiff experiences false rejection or institutional denial, Plaintiff becomes physically ill. Plaintiff has been hospitalized after such experiences. Plaintiff's collapsed lung was triggered by an anxiety attack caused by institutional rejection. Plaintiff brings this motion not from a generalized fear of publicity, but from a documented medical need to avoid the severe physiological consequences of being targeted and harassed.

**II. THE ADVANCE TEXTILE FACTORS SUPPORT PSEUDONYM STATUS**

The Ninth Circuit has articulated seven non-exhaustive factors to guide the pseudonym analysis. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068-1072 (9th Cir. 2000). Each factor supports Plaintiff's motion.

**Factor One – Severity of Threatened Harm**

As detailed in Section I, Plaintiff has received documented death threats. This is the most severe form of threatened harm. The Ninth Circuit has held that threats of physical harm justify pseudonymous litigation. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000). When a litigant faces a credible threat of violence, the public's interest in knowing the litigant's identity yields to the litigant's interest in safety. The threats Plaintiff faces are not hypothetical or speculative – they are documented, specific, and ongoing. The individuals who made these threats have already demonstrated a willingness to engage in violence and harassment. If Plaintiff's true name and location are disclosed on the public docket, these individuals will have a

roadmap to find Plaintiff and carry out their threats. This factor weighs heavily in favor of pseudonym status.

**Factor Two – Vulnerability to Retaliation**

Plaintiff's documented disabilities make Plaintiff particularly vulnerable to retaliation. Plaintiff has been diagnosed with post-traumatic stress disorder, anxiety disorder, fibromyalgia, bipolar disorder, schizophrenia, dyslexia, and cognitive processing disorders. Plaintiff also experiences symptoms consistent with Rejection Sensitive Dysphoria. Although Plaintiff has not been formally diagnosed with ADHD, Plaintiff exhibits symptoms consistent with it, which further impair cognitive functioning. These conditions are exacerbated by stress, harassment, and threats. The same conditions that make Plaintiff vulnerable to discrimination and mistreatment also make Plaintiff particularly susceptible to the harmful effects of public exposure and retaliation.

Plaintiff experiences housing instability and lacks a permanent physical mailing address. Plaintiff uses General Delivery, Folsom, California 95630 as a mailing address, but cannot reliably retrieve mail from General Delivery due to disability-related barriers. The physical act of standing in line at the post office triggers severe pain, nausea, and cognitive overload due to Plaintiff's fibromyalgia, cognitive processing disorders, and Rejection Sensitive Dysphoria.

Plaintiff lacks the financial resources to increase personal security, relocate, or take other protective measures. Plaintiff cannot afford to move to a safer location, hire security, or take other steps to mitigate the risk of harm. These circumstances compound Plaintiff's vulnerability. A person with stable housing and financial resources might be able to mitigate the risk of public disclosure – Plaintiff cannot. This factor weighs heavily in favor of pseudonym status.

**Factor Three – Challenge to Governmental Activity**

This factor favors pseudonym status. The lawsuit involves a private Defendant, an insurance

company, not governmental activity or matters of public concern. Unlike cases that challenge government action, public policy, or matters of widespread public interest, the public has no special need to identify Plaintiff. This is an insurance dispute between a policyholder and an insurer. The public's interest in knowing the identity of the policyholder is minimal. The case does not involve allegations of government misconduct, public corruption, or matters that would require public scrutiny of Plaintiff's identity. This factor weighs in favor of pseudonym status.

**Factor Four – Whether Identity Is Known to Defendant**

Plaintiff will disclose their true identity to Defendant under seal once Defendant appears in this case. Defendant will suffer no prejudice. Defendant will have Plaintiff's true name and all information necessary to investigate the claims, conduct discovery, and defend itself. Defendant already knows Plaintiff's identity from the underlying insurance claim and from prior communications. The pseudonym simply prevents public disclosure – it does not impede Defendant's ability to litigate. Defendant will have full access to Plaintiff's identity for all litigation purposes, including service of process, discovery, and trial. This factor weighs in favor of pseudonym status.

**Factor Five – Deterrence of Other Plaintiffs**

If Plaintiff is required to disclose their true identity on the public docket despite documented death threats, other vulnerable litigants with legitimate safety concerns will be deterred from seeking judicial relief. A rule that requires public identification even in the face of death threats sends a clear message: if you fear for your safety, do not come to court. The Ninth Circuit has recognized that this deterrent effect weighs in favor of allowing pseudonyms. *Advanced Textile*, 214 F.3d at 1071. Plaintiff's case is precisely the kind of situation where the deterrent effect is most acute – a vulnerable litigant facing credible threats of violence who would be forced to choose between their safety and their access to justice. This factor weighs in favor of pseudonym status.

**Factor Six – Objective Verifiability of Claims**

Plaintiff's claims in this action do not depend on Plaintiff's true name. The factual allegations are objectively verifiable through documentary evidence that has nothing to do with Plaintiff's identity. The insurance policy, claim documents, emails, correspondence, medical records, and other evidence can all be produced and evaluated without reference to Plaintiff's legal name. Plaintiff's name proves none of the claims and is necessary for none of them. The case will rise or fall on the documentary evidence and the applicable law, not on who Plaintiff is. This factor weighs in favor of pseudonym status.

**Factor Seven – Alternative Measures**

Proceeding under a pseudonym is a narrow, tailored measure that protects Plaintiff's safety while preserving public access to the proceedings. The public can read every filing, every order, and every ruling. The only information withheld is Plaintiff's true name. No broader restriction on public access is necessary or requested. The Court can still ensure transparency and public accountability while protecting Plaintiff's safety. This factor weighs in favor of pseudonym status.

All seven factors support Plaintiff's motion. No factor weighs against pseudonym status. Under the *Advanced Textile* framework, Plaintiff's request should be granted.

**III. REQUEST FOR SEALED ADDRESS AND PUBLIC MAILING ADDRESS**

Plaintiff requests permission to use the pseudonym "AY" in all public filings and to use General Delivery, Folsom, California 95630 as the public mailing address on the docket. General Delivery is a recognized mailing address authorized by the United States Postal Service.

Plaintiff will provide their true name and physical address to the Court in a separate sealed document filed confidentially with the Clerk. Sealing Plaintiff's address is necessary to prevent the very harm this motion seeks to avoid – public disclosure of Plaintiff's location to individuals who

have made death threats. See *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (compelling reasons required for sealing). The death threats Plaintiff has received constitute compelling reasons to seal Plaintiff's address. Public disclosure of Plaintiff's address would provide the individuals who made these threats with exactly what they need to locate and harm Plaintiff.

The public interest in knowing Plaintiff's identity is minimal. As discussed in Factor Three, this case involves an insurance dispute, not governmental corruption, public policy, or matters of widespread public concern. The general public has no legitimate need to know Plaintiff's identity to understand or evaluate the claims, the evidence, or the Court's rulings. The public interest in transparency is satisfied by the public availability of all filings, orders, and rulings – only Plaintiff's name and address would be protected.

Eastern District of California Local Rule 141 governs the filing of documents under seal. Eastern District of California Local Rule 183(b) provides that if mail directed to a pro se plaintiff is returned by the U.S. Postal Service as undeliverable, and the plaintiff fails to notify the Court of a current address within thirty (30) days of the mail being returned, the Court may dismiss the action for failure to prosecute. Plaintiff will provide a sealed physical address to the Court for compliance with this rule, while using General Delivery as the public mailing address to protect Plaintiff's physical location from public disclosure.

Plaintiff has no intention of avoiding accountability or frustrating the judicial process. Plaintiff will fully disclose their identity to Defendant and to the Court. The pseudonym is requested solely to protect Plaintiff's safety from third parties who have made death threats, not to conceal Plaintiff's identity from those who have a legitimate need to know it.

**IV. CONCLUSION**

Plaintiff asks this Court for a narrow, targeted protection: the ability to litigate this insurance

dispute without having their name appear on the public docket. Plaintiff will tell Defendant who they are. Plaintiff will tell the Court who they are. Plaintiff simply asks that third parties with a history of threatening Plaintiff's life not be given Plaintiff's name and location through the public docket.

The Ninth Circuit's *Advanced Textile* factors uniformly support this request. The threat is severe. Plaintiff is vulnerable. The case involves a private defendant. Defendant will know Plaintiff's identity. Other vulnerable litigants will be deterred if pseudonyms are denied. Plaintiff's claims are verifiable without Plaintiff's name. And the pseudonym is the least restrictive means of protecting Plaintiff's safety.

The death threats Plaintiff has received are not speculative or hypothetical – they are documented, specific, and ongoing. The individuals who made these threats have already demonstrated a willingness to engage in violence and harassment. If Plaintiff's true name and location are disclosed on the public docket, these individuals will have a roadmap to find Plaintiff and carry out their threats. Plaintiff's safety and physical survival depend on this Court's protection.

**WHEREFORE**, Plaintiff respectfully requests that the Court grant this motion and order:

**One:** The parties shall refer to Plaintiff as "AY" in all public filings and proceedings.

**Two:** The parties shall redact all personally identifying information from all public filings.

**Three:** Plaintiff's true name and address shall be filed under seal with the Clerk.

**Four:** Defendant shall serve all documents on Plaintiff electronically via the CM/ECF NEF system, or if Plaintiff is not granted CM/ECF credentials, by email with PDF attachments.

**Five:** This order shall remain in effect unless modified by the Court upon a showing of good cause.

**Six:** Such other and further relief as the Court deems just and proper.

Dated: July 12, 2026

Respectfully submitted,

/s/ AY
AY
Plaintiff, Pro Se

AY, Pro Se
General Delivery
Folsom, CA 95630

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

AY,
Plaintiff,

v.

LEMONADE INSURANCE COMPANY, a New York corporation; and DOES 1 through 100, inclusive,
Defendants.

**Case No.:**

**DECLARATION OF PLAINTIFF IN SUPPORT OF MOTION FOR REASONABLE ACCOMMODATION AND MOTION TO PROCEED UNDER PSEUDONYM**

**I, AY, DECLARE AS FOLLOWS:**

**My Disabilities**

**1.** I have been diagnosed with post-traumatic stress disorder, anxiety disorder, fibromyalgia, bipolar disorder, schizophrenia, dyslexia, and cognitive processing disorders. I also experience symptoms consistent with Rejection Sensitive Dysphoria, commonly associated with ADHD and trauma responses. Although I have not been formally diagnosed with ADHD, I exhibit symptoms consistent with it, which further impair my cognitive functioning and ability to process information. These disabilities substantially impair my ability to read, write, process, and handle paper documents, as well as my ability to appear in person at a courthouse.

**2.** I am entirely dependent on computer-based text-to-speech and dictation technology to access written information and prepare legal documents. I cannot read paper documents. The physical act of reading printed text causes cognitive overload, confusion, migraines, and physical pain. This is a medical necessity – not a preference. My brain, shaped by two decades of trauma in deportation proceedings, cannot process written information on paper without triggering severe cognitive and physical symptoms.

**3.** I suffer from a severe, disability-related fear of courts and legal systems, rooted in two decades of profound trauma experienced during deportation proceedings. These proceedings were initiated by former Immigration Judge Mimi Schooley Yam, who manipulated my testimony, altered my records, and issued a voluntary departure order despite the fact that I had no citizenship or country to repatriate to. The immigration courts repeatedly affirmed this defective judgment without meaningful review. Consequently, I was unable to secure a review on the merits until Judge Yam was removed from the bench. These prolonged proceedings caused and exacerbated my PTSD, anxiety disorder, and related trauma responses. Furthermore, the immense stress of this process severely worsened my pre-existing conditions, including dyslexia and cognitive processing disorders.

**4.** My disabilities also impair my ability to process verbal information in real time. For two decades, I fought deportation exclusively through written filings. During those proceedings, I learned that verbal advocacy was futile because immigration authorities repeatedly ignored my verbal statements and issued false decisions. My brain adapted to this reality. Verbal processing became neurologically linked to trauma. Today, I experience severe difficulty processing spoken language in adversarial settings. This is a documented cognitive processing disorder resulting from prolonged institutional trauma.

**5.** My disability-related fear of courts is grounded in lived experience. Over the course of two decades, I appeared before immigration authorities who repeatedly issued erroneous decisions without reviewing the evidence. The cumulative effect of this prolonged ordeal has produced a severe, debilitating anxiety response to court and government environments. Appearing in person at a courthouse directly triggers panic attacks, PTSD flashbacks, and Rejection Sensitive Dysphoria. This is a profound physiological response to environments that my brain deeply associates with two decades of institutional rejection and systemic trauma.

**6.** My dyslexia and Rejection Sensitive Dysphoria have given me a strong sense of justice and perfectionism. I take great care to make my filings proper and complete. When I make errors and those errors are pointed out to me, I am glad to correct them. I am not someone who files carelessly or refuses to acknowledge mistakes. What I cannot tolerate is pathological denial – the false rejection of my claims without meaningful review, the insistence that something was done when it was not, the assertion that I received notice I never received. When I encounter this kind of institutional denial, I become very ill. I have been hospitalized after false rejections. My collapsed lung was triggered by an anxiety attack caused by institutional rejection. This is not a matter of inconvenience – this is a matter of my physical survival.

**7.** The Social Security Administration has formally determined that I am disabled as a result of this institutional trauma. My disabilities are documented, diagnosed, and severe.

**8.** I am a naturalized United States citizen. I was granted asylum based on official persecution in the United States by government authorities. As a stateless person, I had no country to repatriate to after my asylum was denied. The immigration courts repeatedly ignored evidence of this persecution for two decades. I was only able to secure asylum after I went outside the system and contacted Washington headquarters directly, where my case was finally reviewed on the merits. The persecution I experienced in the United States was the basis for my asylum grant.

**Hardships of Paper Filing and In-Person Appearances**

**9.** I have housing but no permanent physical mailing address. I use General Delivery, Folsom, California 95630 as a mailing address. I cannot reliably retrieve mail from General Delivery due to disability-related barriers. The physical act of standing in line at the post office triggers severe pain, nausea, and cognitive overload due to my fibromyalgia, cognitive processing disorders, and Rejection Sensitive Dysphoria. If the line is too long, I experience debilitating pain and may forget why I came to the post office or what I was supposed to retrieve, due to memory impairment and

cognitive dysfunction. The cumulative effect of these barriers makes retrieving mail from General Delivery impossible on a reliable basis. I cannot receive mail at my physical address due to safety concerns, as I have received documented death threats.

**10.** I cannot afford to print documents. I have no printer and no money for printing. I cannot afford to mail documents. I have no stamps, no envelopes, and no money for postage. I cannot travel to a post office because I have no transportation and no money for postage.

**11.** I cannot deliver documents in person to the Sacramento courthouse. I lack transportation to the Sacramento courthouse and cannot afford public transit or rideshare services. The courthouse is not within walking distance of my residence. Additionally, appearing in person at a courthouse triggers my disability-related fear of courts, causing anxiety attacks, exacerbating my PTSD, and triggering Rejection Sensitive Dysphoria. A trip to the courthouse to file documents could result in hospitalization.

**12.** I cannot receive paper documents, nor can I retrieve mail from General Delivery due to the disability-related barriers described above. Even if physical retrieval were possible, I am unable to read paper documents due to my dyslexia and cognitive processing disorders. The physical act of reading printed text triggers immediate cognitive overload, severe confusion, migraines, and physical pain. Consequently, I am entirely dependent on assistive technology, including computer-based text-to-speech and dictation software, to access written information. Paper documents sent to me by the Court are functionally inaccessible and cannot be successfully received or processed. Such documents are effectively lost the moment they enter the mail stream, depriving me of meaningful legal notice.

**13.** This is not speculation. In Case No. 2:25-cv-03110-DJC-CSK, pending before this Court, mail sent to me was returned as undeliverable. The CM/ECF system generated a Notice of

Electronic Filing confirming that mail service had failed. Despite the returned mail, and despite the NEF confirmation, the District Judge assumed I had been served. The Order (ECF No. 22) states: "The Magistrate Judge issued Findings and Recommendations herein which were served on Plaintiff." This was not true. I never received those documents by mail. I only obtained a courtesy copy after traveling over one hundred miles to the Sacramento courthouse. The Court's incorrect assumption that I was served – despite the returned mail and the NEF confirmation that service failed – resulted in an erroneous dismissal. I am now forced to challenge that dismissal through a Rule 59(e) motion. This is exactly the kind of procedural litigation that I am trying to avoid in this case. I am asking for electronic service specifically to prevent this from happening again.

**14.** I have a phone, but it has no camera and the reception is unstable. Due to my cognitive processing disorders and PTSD, I experience severe difficulty processing verbal information in real time, particularly in adversarial settings. For two decades, I fought deportation exclusively through written filings. I cannot participate in any pretrial hearing by telephone or video.

**15.** Email is my most reliable method of communication. I have regular access to email through shared computers and can receive and respond to electronic communications.

**16.** Without electronic filing and electronic service, I cannot participate in this case at all. I will be unable to file documents, receive court orders, or communicate with the Court. The cumulative effect of requiring paper filing and in-person appearances is to exclude me entirely from the judicial process.

**17.** This Court previously granted my request for electronic filing privileges in Case No. 2:25-cv-03110-DJC-CSK, ECF No. 7 (Dec. 2, 2025). Since that grant, I have complied with all e-filing requirements without incident. I have filed multiple documents through CM/ECF and am fully familiar with the system.

**18.** I understand that I must comply with all Court rules and procedures regarding electronic filing.

**19.** If the Court grants CM/ECF access, I understand that my registration will constitute written consent to electronic service via the Notice of Electronic Filing (NEF) system, pursuant to Federal Rule of Civil Procedure 5(b)(2)(E). If the Court grants only email filing privileges, I understand that Defendant must serve me by email as ordered by the Court.

**20.** I have access to email via public or borrowed devices sufficient to receive electronic notices and to file documents electronically, and I understand my obligation to monitor the docket and maintain a current email address.

**21.** I seek only to have equal access to the Court's services, programs, and activities. I do not seek any advantage over Defendant or any other party.

**22.** I understand that if this case proceeds to trial, I will need to work with the Court to develop a specific trial accommodation plan at that time, and I am prepared to do so.

**23.** I contacted the Court's ADA Coordinator, Yolanda Riley-Portal, Chief Staff Interpreter for the Eastern District of California, regarding my requested accommodations. Ms. Riley-Portal informed me that she only handles accommodations for sign language interpreters and hearing impairment, and that I must contact the assigned judge for accommodations related to cognitive and psychiatric disabilities. I have therefore brought this motion directly to the Court as instructed.

**Death Threats and Safety Concerns**

**24.** I have received documented death threats based on my Jewish identity, non-binary gender identity, disability status, and history as an asylum seeker. These are not vague expressions of dislike or generalized concerns about harassment – they are specific, unequivocal, unconditional, and immediate threats of lethal violence.

**25.** I have been subjected to anti-Semitic harassment, including being called anti-Semitic

slurs, having the Holocaust denied, and being told I should be "gassed in the chamber" and "burned in hell."

**26.** I have been threatened with death by an individual who stated: "I will kill you if you don't drop this." This threat was unequivocal, unconditional, immediate, and specific. It was made because of my legal advocacy, identity, and refusal to drop a complaint.

**27.** These threats were not made by Defendant. They were made by third parties who targeted me because of who I am. But the public docket of this case would provide those third parties with exactly what they need to locate and harm me: my full name, a case number, and a venue. The docket would serve as a roadmap to my location and activities.

**28.** I have also been subjected to constant abuse, harassment, and targeting because of my disability, non-binary status, and vulnerability. I have been subjected to misgendering, retaliation, and intimidation by various individuals and entities. These experiences are not isolated incidents – they form a pattern of targeting that escalates when my identity becomes publicly associated with litigation.

**29.** Disclosure of my physical address or true name on the public docket would endanger my safety and severely exacerbate my diagnosed conditions. These conditions have previously resulted in life-threatening physical harm, including a collapsed lung caused by an anxiety attack and multiple hospitalizations.

**30.** My Rejection Sensitive Dysphoria makes me particularly vulnerable to the consequences of public exposure. When I experience false rejection or institutional denial, I become physically ill. My collapsed lung was triggered by an anxiety attack caused by institutional rejection. I am not bringing this motion from a generalized fear of publicity – I am bringing it from a documented medical need to avoid the severe physiological consequences of being targeted and

harassed.

**31.** I am experiencing housing instability and lack a permanent physical mailing address. I use General Delivery, Folsom, California 95630 as a mailing address. I do not have the financial resources to increase personal security or relocate.

**Disclosure to Defendant**

**32.** I will disclose my true identity to Defendant under seal once they appear in this case. Defendant will suffer no prejudice because they will receive my true identity confidentially and will have full access to my identity for all litigation purposes, including service of process, discovery, and trial.

**33.** Defendant already knows my identity. Defendant has been in communication with me regarding the insurance claim at issue in this case. Defendant will not be prejudiced by my use of a pseudonym in the public docket.

**34.** I do not seek to hide my identity from the Court or from Defendant. I seek only to protect my identity from public disclosure to prevent further harassment, retaliation, intimidation, and physical harm. I have no intention of avoiding accountability or frustrating the judicial process.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on July 12, 2026, at Folsom, California.

/s/ AY
AY
Plaintiff, Pro Se